IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BOB MCCLANAHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-05-382-M |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner appearing pro se, has brought this action seeking damages and declaratory relief pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346 (b) (1),[1] and *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) for violations of his Eighth and Fourteenth Amendment rights. Plaintiff's claims relate to improper medical care he allegedly received – failure to supply blood pressure medication resulting in a condition requiring a pacemaker – while temporarily confined at the Federal Transfer Center ("FTC") in Oklahoma City beginning in April, 2003 [Doc. No. 3, pp. 2 - 6].

In a previous Report and Recommendation, the undersigned recommended that summary judgment[2] be entered in favor of two of the three individuals served by Plaintiff in his *Bivens* claim [Doc. No. 36] – Defendants Callahan and Craiger – and that a determination on Defendant Mier's motion be postponed for a reasonable time pursuant to Plaintiff's Rule 56 (f), Fed. R.Civ.P., request and, thus, be denied as premature [Doc. No.

---

[1] Defendants United States of America, the Attorney General, and the Federal Bureau of Prison have filed their Answer in response to Plaintiff's tort claim [Doc. No. 29].

[2] It was recommended that Defendants' motion to dismiss be treated as one seeking judgment pursuant to Rule 56 (c), Fed.R.Civ.P., as matters outside the pleadings were offered and considered [Doc. No. 46, p.3].

46]. No party objected to the Report and Recommendation, and it was subsequently adopted by this court [Doc. No. 47]. The undersigned then established deadlines allowing Plaintiff to conduct the discovery referenced in his Rule 56 (f), Fed.R.Civ.P., request [Doc. No. 45] and directing him to respond to Defendant Mier's dispositive motion at the conclusion of the discovery period [Doc. No. 48].

Plaintiff filed a motion to compel in connection with his discovery efforts, asserting that he was unable to readily access his medical records [Doc. No. 49]; pursuant to the undersigned's order [Doc. No. 50], Defendant Mier provided Plaintiff with a complete copy of his medical record [Doc. No. 58]. Plaintiff, having been granted the thirty (30) days he requested in order to review the records [Doc. No. 49, p. 3], has now filed his response to Defendant Mier's motion [Doc. No. 60]. Defendant Mier has filed his brief in reply [Doc. No. 61], and the matter is at issue. Because consideration of matters outside the pleadings is necessary to resolve the issues presented by Defendant Mier, it is the recommendation of the undersigned that Defendant Mier's motion be treated as one seeking summary judgment pursuant to Rule 56 (c), Fed.R.Civ.P, and, for the reasons discussed below, that such motion be denied.

**Plaintiff's Complaint and the Procedural Posture of the Case**

The gist of Plaintiff's complaint is that at the time he arrived at the FTC – in route from the Federal Correctional Institution in Sheridan, Washington to another federal institution in Big Spring, Texas – he had been under long-term medication therapy for hypertension and intermittent atrial flutter. Plaintiff claims that he was given only a limited supply of his medications at the FTC and was unable to obtain a timely refill. Plaintiff alleges that the lack of medication resulted in uncontrollably high blood pressure

requiring emergency surgery and the implantation of a permanent pacemaker. Defendant Mier, a Physician Assistant at the FTC, asserts through his dispositive motion that he did not examine Plaintiff until after he had allegedly been without his medication and, thus, did not have the requisite personal involvement with Plaintiff "during pertinent periods." [Doc. No. 61, p. 4]. Defendant Mier advances this same theory in claiming qualified immunity, asserting that Plaintiff has not established that Defendant Mier's actions "violated clearly established statutory or constitutional rights of which a reasonable person would have known." [Doc. No. 39, numbered p. 11]. Defendant Mier relies on a series of specifically delineated facts in support of his arguments [Doc. No. 39, numbered pp. 3 - 5].

"Qualified immunity provides a defense against a *Bivens* action." *Jackson v. Clowers,* 83 Fed. Appx. 990, 992 (10th Cir. Dec. 30, 2003) (unpublished opinion). "After a defendant invokes qualified immunity, the plaintiff in a case like this one, which alleges a violation of the Eighth Amendment, must demonstrate that the defendant's actions violated a specific constitutional right." *Mata v. Saiz,* 427 F.3d 745, 749 (10th Cir. 2005) (citation omitted).[3] Here, Plaintiff has responded with declarations challenging Defendant Mier's version of certain facts crucial to the timing of Defendant Mier's examination of Plaintiff and to the ultimate question of whether Defendant Mier's actions, or inaction, in connection with that examination violated Plaintiff's Eighth Amendment rights.

**Standard of Review**

---

[3] While Plaintiff must additionally show that the constitutional right was clearly established, "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." *Id.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56 (c), Fed.R.Civ.P. "Material factual disputes cannot be resolved through summary judgment based on conflicting affidavits." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Disputed and Undisputed Facts**

(1) There is no dispute that Plaintiff arrived at the FTC on April 4, 2003, with a Medical Record of Federal Prisoner in Transit form indicating, in part, diagnoses of hypertension and intermittent atrial flutter [Doc. No. 61, Exhibit No. 1].

(2) There is also no dispute that on April 4th, Dr. Goforth prescribed, and Plaintiff was issued, fourteen (14) tablets of Lisinopril, his hypertension medication, with instructions to take two (2) tablets every morning [Doc. No. 61, Exhibit Nos. 1 and 4]. Dr. Goforth's prescription authorized three (3) refills of the Lisinopril; the prescription expired on May 4, 2003 [Doc. No. 61, Exhibit No. 4].

(3) Defendant Mier states that "[a]lso of significance is the April 4, 2003 entry that during medical examination Plaintiff had an irregular heart beat." [Doc. No. 39, Fact No. 8, p. 4]. As support for this proposition he cites to "Exhibit 2, Attachment A, Medical Records." *Id.* The undersigned has reviewed the referenced exhibit and has been unable to locate such entry.

(4) Defendant Mier asserts that, "Plaintiff had a seven-day supply of medications, if the medications were taken as prescribed." *Id.* Plaintiff has declared under penalty of perjury that he had not received his medications on the day of his April 4th transfer so he began taking his seven (7) day supply of medication on the 4th, exhausting it prior to April 11th, a Friday [Doc. No. 43, Exhibit C, Plaintiff's Declaration].[4]

(5) Plaintiff saw Defendant Mier, Physician Assistant, at 9:48 a.m. on Monday, April 14th and complained about not having his hypertension medication. Defendant Mier noted Plaintiff's blood pressure at 160/100 and assessed, in part, hypertension and irregular heart rhythm. Defendant Mier prescribed thirty (30) days worth of Lisinopril, ordered an EKG, and noted that Plaintiff should receive follow-up cardiology care at his final prison destination [Doc. No. 39-6, pp. 12 - 13].

(6) Defendant Mier asserts that the records show that Plaintiff's prescriptions were *"refilled"* on April 14, 2003 [Doc. No. 39, Fact No. 11, p. 4]. Plaintiff has declared under penalty of perjury that he did not *receive* his medication until 9:00 p.m. on Monday, April 14th and, consequently, was without the medication for four (4) days [Doc. No. 43, Exhibit C, Plaintiff's Declaration].

(7) "At approximately 10:20 p.m. on April 14, 2003, Plaintiff complained of shortness of breath, sweating, weakness and fatigue and dizziness. An electrocardiogram (EKG) was done, revealing atrial flutter and the on-duty physician sent Plaintiff to St. Anthony's Hospital via ambulance." [Doc. No. 39, Defendants' Fact No. 13, p. 4].

---

[4] Plaintiff's complaint and various declarations describe his efforts to obtain his medications on Friday the 11th and throughout the weekend. Defendant Mier asserts that, "There is no documentation showing that Plaintiff turned in his empty medication bottles for refill on Friday, April 11, 2003." [Doc. No. 39, Fact No. 10, p. 4].

      Plaintiff subsequently underwent surgery for implantation of a permanent pacemaker. *Id.* at No. 14.

(8) Medical records show that Plaintiff's blood pressure was 240/116 when first examined on the night of April 14th [Doc. No. 39-6, p. 11]; Plaintiff subsequently complained of, and was assessed with, chest pain [Doc. No. 39-4, pp. 5, 7 and 8; Doc. No. 39-6, p. 9].

(9) Dr. Gene M. Roffers, the Bureau of Prisons' Clinical Specialty Consultant for the South Central Region, reviewed Plaintiff's medical records and noted that Plaintiff had been diagnosed with a long-standing cardiac arrhythmia called atrial flutter while incarcerated at FCI Sheridan in January, 1999 [Doc. No. 39, Exhibit 2, No. 5, Declaration of Dr. Gene Roffers]. Dr. Roffers stated that Plaintiff "was started on a medication and converted to normal rhythm within two months." *Id.* Dr. Roffers continued by observing that, "There is no more documentation of this problem except a notation on the Medical Summary of Federal Prisoner/Alien in Transit form dated April 4, 2003, indicating a diagnosis of intermittent atrial flutter." *Id.*

(10) Dr. Roffers opined that, "It is my opinion that even if inmate McClanahan did go without Lisinopril for a period of 2 - 3 days, this lack of Lisinopril did not contribute to the last episode of symptomatic atrial flutter, or the resultant need for a permanent pacemaker. Inmate McClanahan has had symptomatic sick sinus syndrome for a number of years and the permanent pacemaker was inevitable." *Id.* at No. 8.

**<u>Analysis</u>**

The deliberate indifference by a prison official to the serious medical needs of an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97 (1976). This deliberate indifference standard has two components: (1) an objective component in which the plaintiff's pain or deprivation must be shown to be sufficiently serious, and (2) a subjective component in which it must be shown that the offending official acted with a sufficiently culpable state of mind. *See Handy v. Price,* 996 F.2d 1064, 1067 (10th Cir. 1993); *Miller v. Glantz,* 948 F.2d 1562, 1569 (10th Cir. 1991). As to the objective component, the Tenth Circuit has stated that a condition is sufficiently serious where the condition is one diagnosed by a physician as mandating treatment or that is so obvious even a lay person would easily recognize the necessity for a doctor's attention. *See Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980). As to the subjective prong of this test, a plaintiff must establish that a defendant knew of a substantial risk of harm and failed to take reasonable measures to abate it. *See Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). A prisoner "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of material harm." *Farmer v. Brennan,* 511 U.S. 825, 842 (1994).

Here, Plaintiff had been diagnosed with hypertension and intermittent atrial flutter – both of which were under control with medication prescribed by a physician – prior to his temporary transfer to the FTC. Plaintiff's medications were continued upon his arrival at the FTC, but at some point, he exhausted his supply of the medications and was unable to obtain more for *at least* a two (2) to three (3) day period. Plaintiff has established through medical records that he then advised Defendant Mier that he had been without his

medication; Defendant Mier's subsequent examination revealed a blood pressure reading of 160/100 and an irregular heart beat.  According to his written treatment notes, Defendant Mier's response to these findings was to reissue medication prescriptions, to order an EKG, and to advise that Plaintiff have a follow up with cardiology when he reached his ultimate prison destination.   There is no written indication in the record as to the time the medications were actually distributed.   Plaintiff swears that he did not receive his medication until 9:00 p.m., over eleven (11) hours after he advised Defendant Mier that he had been without his prescribed medication.[5]  According to Defendant Mier's expert, going without his "Lisinopril for a period of 2 - 3 days . . . did not contribute to [Plaintiff's] last episode of symptomatic atrial flutter, or the resultant need for a permanent pacemaker." [Doc. No. 39, Exhibit 2, No. 8, Declaration of Dr. Gene Roffers].[6]  The expert's opinion necessarily leaves open the question of whether being  without the medication for a longer period of time *could* have resulted in   the episode, in Plaintiff's documented pain, in the need for a surgical procedure, and in the need for the permanent implantation of a pacemaker.

Genuine issues of fact prevent the entry of summary judgment against Plaintiff on both the objective and subjective elements prescribed by *Estelle.*  First, as to the question

---

[5]In an administrative review request attached to Defendants' motion to dismiss in connection with exhaustion issues, Plaintiff stated that

> On Monday, I signed up for sick-call and had my blood pressure checked.  The blood pressure was extremely high.  I asked for my medication at this time.  I was again told that I had to wait.  I finally received my medication in the late evening of the 14th of April.

[Doc. No. 39-15, p. 12].

[6]Dr. Roffers' declaration reflects his belief that Plaintiff's medication was "filled" on the *morning* of April 14th [Doc. No. 39, Exhibit 2, No. 6, Declaration of Dr. Gene Roffers].

8

of whether the harm suffered by Plaintiff "rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause[,]" *Mata,* 427 F.3d at 753 (citation omitted), Plaintiff has demonstrated that he suffered from medical conditions requiring daily medication and, moreover, that after not receiving the prescribed medications in the manner scheduled, he suffered from uncontrollable blood pressure, from atrial flutter, from chest pain, and from the surgical implantation of a permanent pacemaker. *See id.* at 755. With regard to the second component – whether Plaintiff has proffered adequate evidence to maintain his claim that Defendant Mier was deliberately indifferent to Plaintiff's serious medical needs – Plaintiff has demonstrated that Defendant Mier was aware that Plaintiff had not received medication that had been ordered by a physician to control Plaintiff's hypertension. He has likewise demonstrated that Defendant Mier was aware that Plaintiff's blood pressure was elevated and that he was experiencing an irregular heart rhythm. Plaintiff has shown that Defendant Mier's response was to prescribe the medication yet again, to order an EKG, and to recommend a follow-up consultation at Plaintiff's ultimate prison destination. It is reasonable that a jury could conclude that Defendant Mier's inaction – for example, alleged his failure to immediately dispense, or cause to be immediately dispensed, the blood pressure medication that a physician had already prescribed – amounts to deliberate indifference to Plaintiff's serious medical needs. *See id.* at 759.

Genuine issues of fact exist with regard to whether Defendant Mier acted with deliberate indifference to Plaintiff's medical needs, and Defendant Mier's motion for summary judgment should be denied.

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons stated above, it is recommended that Defendant Mier's motion to dismiss [Doc. No. 39] be treated as one seeking judgment pursuant to Rule 56 (c), Fed.R.Civ.P., and that such motion be denied.

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by the 20th day of March, 2007, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED THIS 28th day of February, 2007.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE